AGREEMENT

BY AND BETWEEN

N. Y. P. HOLDINGS, INC.

AND

THE NEW YORK NEWSPAPER PRINTING

PRESSMEN'S UNION NUMBER TWO

CONFIDENTIAL

NYP 00395

## TABLE OF CONTENTS

**SECTIONS**                                                                                                                 <u>Page</u>

1............................................................................ WHEN AGREEMENT EFFECTIVE        1
2................................................................................................................ PURPOSE        2
3............................................................................................... RECOGNITION        2
4.................................................................................... UNION SECURITY        2
5.................................................................................... UNION REFERRAL        3
6.............................................................................................JURISDICTION        3
7................................................................................ UNION GUARANTEE        3
8..................................................................................... PLANT RELOCATION        4
9..................................................................... CHAPEL REPRESENTATIVES        4
10......................................................................................... FOREMEN        5
11........................................................................................HIRING        6
12.....................................................................HOURS OF WORK        9
13...................................................................................OVERTIME        10
14...................................................................................CALL BACK        11
15......................................................................................HOLIDAYS        11
16.................................................................................. JURY DUTY        12
17.................................................................BEREAVEMENT LEAVE        13
18................................................................................... WAGES        13
19................................................................................. MANNING        15
20.................................................................................TRANSFERS        18
21........................................................................................ STRIPPING        18
22.................................................................... WELFARE FUND        18
23.................................................................PENSION FUND        19
24.................................................................. DBL PAYMENTS        21
25.................................................................. SHOP APPRENTICE        21
26..................................JOINT APPRENTICESHIP COMMITTEE        22
27.........................................................................VACATION        23
28.........................................................................OPTIONAL LEAVE        25
29.................................................ABSENCE FROM WORK        26
30.................................................APPRENTICESHIP SYSTEM        26

CONFIDENTIAL

NYP 00396

31..........................................................................BENEFIT INSURANCE    29

32.................................................CREDITS FOR ATTENDANCE AT JOINT MEETINGS    30

33............................................................................HEALTH AND SANITATION    30

34..............................................................................................FOOD SERVICES    32

35.............................................................................................RECALL RIGHTS    32

36.................................................................................... WORK CLOTHES    32

37...........................................................................PAYROLL CORRECTIONS    33

38............................................................................... CREDIT UNION    33

39.............................................................................DUES CHECK-OFF    33

40.......................................................................... ADMINISTRATION    34

41.............................................................................401(K) PLAN    35

42.................................................................JOINT CONFERENCE COMMITTEE    35

43.............................................SUSPENSION, MERGER, OR CONSOLIDATION PAY    38

44............................................................................... SUCCESSORSHIP    38

45.................................................ILLEGALITY - SAVINGS PROVISION    38

46...........................................................EXCLUSIVITY OF AGREEMENT    39

CONFIDENTIAL

NYP 00397

AGREEMENT
BY AND BETWEEN
N. Y. P. HOLDINGS, INC.

AND

THE NEW YORK NEWSPAPER PRINTING
PRESSMEN'S UNION NUMBER TWO

THIS AGREEMENT is made and entered into this 1st day of October, 1993 by and between N. Y. P. Holdings, Inc. (the "Publisher") and The New York Newspaper Printing Pressmen's Union Number Two (the "Union") and has been extended and amended this _____ day of August, 2000.

## PARTIES

### 1.    WHEN AGREEMENT EFFECTIVE

SECTION 1.   This Amended Agreement shall become effective upon the first full week following its ratification and shall continue in full force and effect until October 31, 2015, inclusive.   On November 1, 2015, it shall automatically renew for successive periods of twelve months unless, at least ninety (90) days prior to the end of any twelve-month effective period, either party shall serve notice upon the other that it desires cancellation, revision or modification of any provision or provisions of this Agreement. If either party serves such notice, the parties shall attempt to reach an agreement with respect to the proposed change or changes. At least sixty (60) days prior to the expiration date of the Agreement the parties shall meet to consider such changes. If agreement has not been reached on a new contract by the date on which this contract expires, the provisions of this contract will remain in full force and effect until an Agreement is reached or until either party gives the other party written notice terminating the Agreement.

CONFIDENTIAL

NYP 00398

## 2.    PURPOSE

SECTION 2. The purpose of this Agreement is to establish a basis of employment and an understanding of mutual helpfulness between the parties hereto in the promotion of the newspaper industry of New York City toward the end of maintaining harmonious relations, maximum production, superlative quality, and the elimination of waste. It is agreed that this Agreement contains the complete understanding of the Publisher and the Union. It is also agreed that all the contractual rights of the parties are as specifically stated in the Agreement, which supersedes all prior agreements between the Publisher (or any of its predecessors, including the Publishers' Association of New York City, or New York Post Co., Inc.) and the Union, including any letters of interpretation, verbal understandings, past practices and/or arbitration awards. Amendments to this Agreement shall be in writing and signed by both parties.

## 3.    RECOGNITION

SECTION 3. The Publisher recognizes the Union as the exclusive bargaining representative with respect to rates of pay, wages, hours of employment or other conditions of employment for all persons employed in the pressroom of the Publisher, excluding all professional employees, guards, and supervisors as defined in the National Labor Relations Act as amended.

## 4.    UNION SECURITY

SECTION 4. All employees who are members of the Union on the effective date of this Agreement are required to remain members of the Union. Employees not presently members of the Union who come within the coverage of this Agreement, must make application for membership in the Union, and become a member thirty (30) days following the beginning of such employment or the effective date of this Agreement, whichever is later.

CONFIDENTIAL

NYP 00399

5.     UNION REFERRAL

SECTION 5.  The Union agrees to furnish competent pressmen, apprentices and junior pressmen qualified to work on a straight-time basis in the numbers required by the Publisher and at such times as the Publisher requires, upon four hours' notice. In the event that the foregoing procedure fails to produce a force of pressroom employees sufficient to meet the Publisher's requirements, the Publisher will endeavor to obtain from the Union, sufficient Union members to work on a straight time basis. In any event, the work required to produce the several editions shall proceed without interruption. Such workmen so engaged by the Publisher shall receive the rate of wages herein provided for the work done.

6.     JURISDICTION

SECTION 6.  The Union shall have exclusive jurisdiction over and an exclusive right to perform all work relating to the operation of the presses. The Publisher may assign new or additional work to the unit.

If in the future the Publisher installs offset printing presses, flexo presses or any other presses to produce all or part of the newspaper, the Union shall have exclusive jurisdiction over and an exclusive right to perform all work relating to the operation of such presses.

In addition to operation of presses, the jurisdiction of the Union shall include the cleaning, maintenance and the adjustments necessary for completion of the printed newspaper.

The Publisher agrees to give the Union ninety (90) days notice prior to the installation of new presses or processes.

7.     UNION GUARANTEE

SECTION 7.  The Union guarantees that it will require its members to exercise maximum care in the operation and maintenance of all the machinery and material handled by

CONFIDENTIAL

NYP 00400

them and the Union also guarantees at all times a full and satisfactory production from such machinery and material.

## 8.    PLANT RELOCATION

SECTION 8.  Should the Publisher remove his production plant or any part thereof to another location which produces newspapers for distribution primarily in the New York metropolitan area, the Publisher shall recognize the Union as the bargaining representative for pressroom employees and shall give at least three months notice prior to such relocation. The Publisher and the Union agree that this Agreement shall have full force and effect at any new, refurbished or rebuilt plants which produce newspapers for distribution primarily in the New York Metropolitan area. The metropolitan area, as defined by the Metropolitan Regional Council, consists of the five boroughs of New York City, the counties of Nassau, Suffolk, Westchester, Putnam, Dutchess, Rockland and Orange in New York State; the counties of Bergen, Essex, Hudson, Middlesex, Monmouth, Morris, Passaic, Somerset and Union in New Jersey, and Fairfield County in Connecticut.

## 9.    CHAPEL REPRESENTATIVES

SECTION 9.  The Union may have a chapel chairman who shall be considered as part of the production manning, but will be excused from working on the presses if, in his sole discretion, he deems it necessary to perform his duties as Chapel Chairman, and only he or his designated representative may in his absence report to the Union any alleged violations of this contract that cannot be settled satisfactorily with the Publisher through the foremen. No chapel meeting shall be held during working hours without first obtaining permission of the designated representative of the Publisher which shall not be unreasonably withheld.

CONFIDENTIAL

NYP 00401

Representatives of the Union, may visit the plant for any legitimate purpose relating to their duties as Union representatives. When visiting the plant, such representatives will not interfere with the progress of the work.

### 10.    FOREMEN

SECTION 10. The Publisher shall designate a foreman who shall be the Publisher's unrestricted representative with the authority to direct the pressroom work force. No one, except a foreman, is authorized to issue orders or change working conditions in the pressroom. Foremen shall have sole authority to employ employees and may discharge employees (1) for incompetence, (2) for neglect of duty, (3) for insubordination, (4) for violation of office rules which have been conspicuously posted, or for violation of the terms of this Agreement, or (5) when it becomes necessary to decrease the working force. The justification for such discharge is an arbitrable issue except for (5) above. When discharged an employee may request the reason for his discharge and an answer shall immediately be given by the foremen.

Foremen may assist in the performance of bargaining unit work, provided they do not displace bargaining unit employees in the performance of bargaining unit work.

The right of the Publisher, through the foremen, to designate and direct the work of employees on presses or in the pressroom on all editions and at all times, is acknowledged by the Union. The foremen shall be the sole judge of an employee's competency and general fitness for work and pressroom employees shall work under the foremen's direction at all times at the wages specified in this Agreement.

All time covered by this Agreement belongs to the Publisher, and employees shall temporarily or regularly perform such duties pertaining to press work as may be assigned to them by the foremen. While working at 205 South Street, a uniform starting time for employees on all shifts shall be maintained. At the Bronx production facility and/or any subsequent facility, all

CONFIDENTIAL

NYP 00402

press crews and related room hires can be scheduled to work at different times so long as the manning requirements of the Contract are complied with. Subject only to the terms of this Agreement, the management of the business, operation of the plants and facilities, and the authority to execute all the various duties, functions and responsibilities incident thereto, including the establishment of such rules of work and conduct as it deems necessary, is vested in the Publisher. The Publisher reserves and retains all of its normal, inherent and common law rights to manage the business, whether or not exercised, excluding only such rights which are specifically relinquished or modified by specific provisions of this Agreement.

Foremen shall hold union membership. Their wages, terms and conditions of employment shall be the product of individual negotiations with the Publisher. The Publisher agrees that foremen will be covered by the Publishers' Pressmen's Welfare Fund and the Publisher will make contributions to the Welfare Fund on behalf of foremen. Foremen will be covered by the management pension plan and the Publisher will make no contributions on behalf of foremen to the Pressmen's Publishers' Pension Fund.

## 11.    HIRING

SECTION 11. When it becomes necessary for the Publisher to supplement its force of regularly scheduled pressroom employees, it will do so from a shape in accordance with this Section. After a junior pressman is added to the shop priority list he will be required to complete such necessary employment forms needed by the Publisher to meet its legal obligations. The Publisher shall have the right to establish the physical fitness of all applicants.

The foreman shall notify the Chapel Chairman or his designee of the number of hires required and the Chapel Chairman or his designee shall notify listed eligibles shaping when and where to report to work through a telephone procedure to be agreed upon by the Publisher and the Union. Notwithstanding any other provision of this contract, the use of such "shape"

CONFIDENTIAL

NYP 00403

shall not result in any cost to the Publisher in the form of call-in-pay or otherwise. Additional casual hires required by the Publisher shall be office hires.

In hiring journeymen, they shall be selected in the following order:

(1)    Journeymen appearing on the shop priority list.

(2)    Journeymen appearing on the shop priority list of publishers once comprising the Publishers Association of New York City who have traditionally been the source of competent substitutes.

In hiring apprentices or junior pressmen or in advancing them to temporary apprentice or journeyman status when apprentices are not available, they shall be selected in the following order:

1.    Apprentices appearing on shop priority list.

2.    Industry Apprentices on shop priority list.

3.    Junior Pressmen on shop priority list.

4.    Outside Industry Apprentices listed by the Joint Apprenticeship Committee.

5.    Outside Junior Pressmen listed by the Joint Apprenticeship Committee.

Apprentices and Junior Pressmen, from offices of employers who are not signatory to this Agreement, are to be added to the Joint Apprenticeship Committee Industry Apprentices and Junior Pressmen list in categories (4) or (5) above by employment dates as established by the Joint Apprenticeship Committee. It is expressly understood that physical incapacity may disqualify a junior otherwise deemed competent and experienced. It is agreed, however, that in decreasing the force the foreman shall lay off the last man or men employed by the office, and in re-hiring journeymen and juniors shall be selected in accordance with their

CONFIDENTIAL

NYP 00404

priority standing in the office, provided that priority for extras shall apply only if they are available at the office at shape-up time. The Union shall supply and maintain the office priority list of journeymen arranged in the sequence of tenure of employment. However, the office is privileged to select any member of the Union in good standing as foreman and assistant foreman. The office may select any journeymen as pressmen-in-charge provided that on the basis of priority in the pressroom they would be eligible to work that particular day or night.

Foremen may in their discretion allow pressroom employees to go home before the expiration of their specified day or night shift hours, provided their work is finished. In such cases, each pressroom employee shall receive a full day or night shift's pay when granted permission to go home before the specified hours of work for his/her shift have expired. When pressroom employees are ordered to report for work and so report, they shall receive their day or night shift's pay so long as there has been no interruption of production in violation of Section 43 which causes or results in pressroom employees working less than the specified hours of their shift.

### MARK-UP

The Publisher agrees to post work schedules every two (2) weeks subject to weekly modification identifying the five (5) day work opportunities for regular employees in the pressroom, noting vacation or other known absences. Notices of modifications will be provided as follows:

On Friday the operating schedules for the following week will be posted, together with tentative operating schedules for the next following week. Such schedules will indicate, by day, the sizes of the press crews. The Publisher will make every effort to post accurate schedules.

**CONFIDENTIAL**

NYP 00405

Should the schedules be found to be consistently in error, the Union may call for a review of the practices concerning schedules.

If the unit configuration of one or more presses is different from what was scheduled, and such difference results in fewer pressmen being required to operate the press then were scheduled, then up until shift starting time of the press(es) the excess pressmen may be reassigned to other presses.

In the event the Publisher determines that the number of presses to be used on a daily basis must be reduced and employees laid off, the Union shall be given notice in writing two (2) weeks in advance of the proposed action. This notice period shall not apply in the event of a temporary or permanent suspension of publication.

## 12.     HOURS OF WORK

SECTION 12. Night work shall be performed in the following manner: one night of seven hours exclusive of one-half hour for lunch to be designated by the Publisher and to be changed only upon one week's notice; all other nights during the week to be of six and one-half hours each. The Publisher may send press crews to lunch one or more full press crews at a time. Lunch periods shall be scheduled to start and finish between the second and fifth hour after starting work, except on the six and one-half hour night shift as provided in the next paragraph.

On the six and one-half hour nights the Publisher shall have continuous operation and no lunch period is required to be given at the expense of the office, provided, however, that no employee shall work longer than six and one-half hours except in emergencies over which the Publisher has no control, in which event the employee may be required to work not exceeding thirty minutes to finish the run for which one-half hour at overtime rate shall be paid in addition to pay for the overtime actually worked; provided further that when a night's work exceeding six and one-half hours is foreseeable, the Publisher shall send employees, including press crews, to

CONFIDENTIAL

-9-

NYP 00406

luncheon with pay, and in that event lunch periods shall be scheduled to start and finish between the second and fifth hour after starting work.

When a junior or apprentice is temporarily advanced during his shift to journeyman status, the hours worked prior to the advancement will be paid as if they were worked at the journeyman's rate.

Night work shall be between 8:00 p.m. and 6:00 a.m. except that upon notification to the Union in writing the Publisher may elect to substitute a night starting time of 7:00 p.m. instead of 8:00 p.m. On Saturday nights, however, the hours shall be between 4:00 p.m. and 5:00 a.m. Should the Publisher establish an evening publication employees required to work Saturday night to print a Sunday issue or any supplement of such issue, shall work seven continuous hours, exclusive of one-half hour for lunch, and shall receive the night wages herein provided. On any night other than Saturday night such employee shall work six and one-half hours as provided in this Article and shall receive the night wages.

All work performed between 7:00 a.m. and 7:00 p.m. on Sundays shall be paid for at double time. When no work is performed no pay shall be given.

## 13.  OVERTIME

SECTION 13. Pressroom employees may be called before the hours provided in the previous Section for the beginning of night work or day work and may be kept at work after the hours provided in the previous Sections for the ending of night work or day work whenever in the judgment of the office it is necessary, but all work outside such hours shall be considered as overtime and paid for at the rate of time and one-half. All time required and actually worked before or after a regular day's or night's work shall be counted as overtime and shall be paid for at the rate of time and one-half for any part of the first four hours of such overtime and double time thereafter.

CONFIDENTIAL

NYP 00407

### 14.   CALL BACK

SECTION 14. When employees are called back for work after getting "Good Day" or "Good Night" they shall receive a bonus of $8.50 for the call and shall be paid at the prevailing overtime rate for all time actually worked after reporting to their positions.

### 15.   HOLIDAYS

SECTION 15. The following shall be paid holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day, Washington's Birthday, Lincoln's Birthday or days celebrated as such.

Regular employees are entitled to the above holidays with pay. A regular employee is described as one whose name appears on the Pressroom priority list approved by the office and who has qualified for such listing by one month's continuous availability for work in the office. When needed or consistent with the terms of this Agreement, the Publisher will add employees to the Pressroom priority list.

No holiday payment of any kind shall be made to an employee who trips, i.e., an employee who is scheduled to work a holiday shift but who does not report for work and has not been excused by the foreman prior to the starting time for such shift or does not have a bona fide excuse.

When a newspaper is published on any of the aforementioned holidays, all work performed between 7:00 a.m. on these days and 7:00 a.m. on the day following shall be paid for at double single time for straight time work and price and one-half thereof for all overtime. A regular employee who works on a holiday that was one of his/her regularly scheduled days off shall be paid at the triple time rate (which rate includes the holiday pay) for all hours worked.

There shall be no reduction in the holiday rate of overtime for the completion of a work shift, i.e., if it becomes necessary to go beyond the end of the work shift of the holiday or

CONFIDENTIAL

NYP 00408

day celebrated as such to complete the work shift, there shall be no reduction in the holiday rate of overtime.

An employee covered by this Agreement who is eligible for benefits under the Worker's Compensation Law, including the Disability Benefits Law and on the same day is eligible for holiday pay for one of the holidays specified under this Section, will be paid holiday pay for such holidays that occur under this Section for a period of twelve (12) months from the date he/she was found eligible for such benefits and is off work receiving such benefits. Thereafter, such employee shall receive no further holiday pay while off work receiving such benefits.

## 16.    JURY DUTY

SECTION 16: A regular employee covered by this Agreement with at least 30 days of priority in the shop as a regular employee who is required to report for jury service or to qualify for jury service on a date when he normally would have been scheduled to work any shift shall be paid, for such jury service, in addition to the day of qualification, the difference between the fee received for such service and his regular shift's pay at straight-time rates. To become eligible for such payment, the employee must inform his foreman in writing of the call to jury service within twenty-four hours of receipt of the official notification, and then must furnish to the foremen a statement of jury service from the Clerk of the Court.

When an employee's slide day coincides with his day of qualification as a juror or with days served on jury duty, he may elect to be paid for such slide days and shall be given alternative slide days to ensure five shifts' pay in this fiscal week.

When the day of qualification as a juror occurs during an employee's scheduled vacation, the employee will be given an additional day off with pay as a consecutive part of this vacation.

CONFIDENTIAL

NYP 00409

-12-

## 17.    BEREAVEMENT LEAVE

SECTION 17. A regular employee covered by this Agreement who has a death in his immediate family shall be given, on written application to the Publisher, three (3) consecutive days off with pay, one of which shall be the day of the funeral. If however, one or two of such three consecutive days off with pay (one of which shall be the day of the funeral) are the employee's regularly scheduled off days, one of the off days will be rescheduled to ensure the employee at least two days of such paid leave.

For the purpose of this Article "immediate family" shall include spouse, parents, children, brother, sister, father-in-law, mother-in-law, daughter-in-law, son-in-law, brother-in-law, sister-in-law, grandparents and legal dependents as defined by the Internal Revenue Code and Regulations.

## 18.    WAGES

SECTION 18. Wage rates shall be as set forth below:

(a)    Effective the first full week following the signing of this Amended Agreement, the weekly night rate for journeymen shall be $1,100. The wage rates for all classifications are set forth in Appendix A.

(b)    Effective November 1, 2001 and each November 1 thereafter through November 1, 2014, the weekly night rate shall be increased by two (2) percent each year.

(c)    A $3500 signing bonus shall be paid to all employees (non-supervisory) on the Post priority list as of the date of ratification. The Publisher will attempt to flat tax the payment but cannot guarantee that this will be done.

(d)    There will be established a casual rate of $150 per day for all casuals regardless of the work performed except when a casual is elevated to journeyman status in which

CONFIDENTIAL

NYP 00410

case the casual should receive the journeyman rate. This will be the rate upon which future increases shall be based.

During the term of this Agreement, the Union, upon thirty (30) days notice, shall have the right to divert any part of a current wage scale or scheduled wage increase to maintain or improve the benefits provided by the Welfare or Pension Plans set forth in this Agreement. The Union should signify in writing if it wishes to divert any part of a current wage or scheduled wage increase to either the Welfare or Pension Fund or both, then the Publisher will make adjustments in the wage structures specified in the contract within fourteen days.

The Publisher agrees that the Union may adjust the percent contribution to the Pension Fund from a five shift per week basis to a percentage of straight time shifts worked or a percentage of gross payroll, but at no cost to the Publisher.

No employee shall be required to contribute for more than five (5) shifts in any payroll week except as provided in Sections 22, 23, 28.

Junior Pressmen and Industry Apprentices shall move from one experience wage level to another at their individual anniversary dates.

Note: Percentage calculations in the above schedules are subject to verification of Publisher and Union auditors.

## WAGE CONTROLS

In the event the Federal Government establishes a program of wage controls during the term of this Agreement and should such program prohibit, nullify or reduce any scheduled wage increase provided for employees during the term of this Agreement, the Union shall have the right to terminate this Agreement as of the date such wage increase is scheduled to become effective.

CONFIDENTIAL

NYP 00411

19.    MANNING[1]

SECTION 19. A press unit at 205 South Street is hereby defined to mean that part of a press consisting of two (2) four (4) plate wide and two (2) plate around plate cylinders, two (2) four (4) plate wide impression cylinders, and the entire mechanism and equipment pertaining thereto and necessary for the completion of a printed newspaper. At the Bronx production facility, a press unit shall be defined to mean a tower whether that tower be 5 over 5, 4 over 4, 3 over 3, 2 over 2, over 1 over 1 (mono).

PRODUCTION MANNING

The following shall be the manning schedule for all four (4) plate wide presses at 205 South Street and all the presses at the Bronx facility, it being understood that such manning shall cover such make-ready as required by the foreman, maintenance necessary to finish the press run and, at South Street, light cleaning. It is understood and agreed that the term "light cleaning" does not include any work after the run is completed or any work which requires the use of bucket and cleaning solution.

It is understood, however, that with the move to the Bronx production facility, the presses will be cleaned by the production crew at the end of the run on each shift. The clean up work at the end of the shift shall consist of cleaning blankets and ink rails as directed. The production crew will remove all debris resulting from the cleaning of the blankets and rails. Post run cleaning time shall be one hour unless or until the Publisher purchases and utilizes an automatic blanket cleaner in which case it will be one half hour. In no case shall pressmen receive a second paid lunch because of performing overtime because of post shift clean up.

CONFIDENTIAL

---

[1] The current distinction between journeymen's work and junior's work shall be maintained.

NYP 00412

Units

| | |
|---|---|
| 1 | 4 journeymen (including 1 PIC) and 1 junior |
| 2 | 4 journeymen (including 1 PIC) and 1 junior |
| 3 | 5 journeymen (including 1 PIC) and 2 juniors |
| 4 | 6 journeymen (including 1 PIC) and 2 juniors |
| 5 | 7 journeymen (including 2 PIC) and 2 juniors |
| 6 | 8 journeymen (including 2 PIC) and 2 juniors |
| 7 | 9 journeymen (including 2 PIC) and 2 juniors |
| 8 | 10 journeymen (including 2 PIC) and 2 juniors |
| 9 | 11 journeymen (including 2 PIC) and 2 juniors |
| 10 | 12 journeymen (including 2 PIC) and 2 juniors |

At the Bronx production facility when all of the tower press units are being utilized and one or more of the tower press units are split, add one journeyman.

One junior to perform plateperson responsibilities will be hired for the room.

One clerk will be hired for the room but will perform no overtime unless scheduled. It is understood that this means that the clerk may be given a straight time schedule of 6 1/2 hours to perform his/her functions at least two (2) hours before the first press crew is scheduled to work. If the clerk is required to work more than 6 1/2 hours, he/she shall be paid for such time worked over 6 1/2 hours at the prevailing overtime rate of pay.

## MAINTENANCE, CLEANING, MAKE-READY

Regular maintenance, cleaning and make-ready shifts shall be performed by journeymen and junior pressmen in addition to the manning requirements set forth above. At 205 South Street, the Publisher shall employ a minimum of eight (8) persons (5 journeymen including 1 PIC and 3 juniors), per day, four (4) days per week and seven (7) persons (4 journeymen including 1 PIC and 3 juniors) one (1) day per week, the day to be at the Publisher's discretion, for such maintenance. At the Bronx facility, the Publisher shall schedule a minimum

CONFIDENTIAL

NYP 00413

of thirteen (13) persons (eight (8) journeymen including 1 PIC, and five (5) juniors) six days per week for such regular maintenance, cleaning and make-ready work as the foreman may require. All presses will be cleaned as directed by the foremen at least once per week. In the process of cleaning the presses, the equivalent of one (1) full press minus the equivalent of one four (4) over (4) tower press unit will be cleaned inside and out along with such other cleaning and maintenance work as may be required by the foremen. However, it is clearly understood that the equivalent of one four (4) over four (4) tower press unit will not be cleaned on a daily basis.

It is understood the Publisher may employ such additional persons from time to time as the foreman may require.

## NEW EQUIPMENT

Prior to the operation for production purposes of any new type of equipment in the pressroom beyond the type of equipment to be introduced at the opening of the new Bronx facility, the Publisher will give the Union sixty (60) days advance notice. During this period, the parties shall meet and endeavor to resolve any questions or concerns with the method of operations and manning requirements.

Should there be a difference of opinion between the Office and Union on these matters, the Publisher shall determine the initial method of operation and the complement of men to be used. If after six (6) months of operation, the Union believes an undue hardship exists, the Union may refer the issue to arbitration for a final and binding decision.

CONFIDENTIAL

NYP 00414

### 20.    TRANSFERS

SECTION 20. It is agreed that transfer of press crews shall be kept at a minimum and shall be assigned as equally as practicable, and to accomplish this purpose the following regulations shall govern:

Press crew or crews may be transferred from the press to which assigned and back again not more than once in a regular working shift, except as hereinafter provided. There shall be no limitations on transfer under the following conditions:

(i)    If a transfer is being made by a press crew or press crews working on overtime;

(ii)    Crews may be transferred for mechanical breakdowns or for mailroom reorders;

(iii)    The Publisher hires an additional crew to relieve one (1) or more regular full press crews, it being understood that this will apply only to the additional crew.

### 21.    STRIPPING

SECTION 21. Stripping time will be ten (10) minutes when six (6) or more units are run. Otherwise, stripping time will be five (5) minutes when five (5) or fewer units are run. Strip time will be counted in actual minutes from off-time which shall begin when the foreman or his designee gives the okay. If stripping a press involves an extra move of the press for removing color plates, an additional five (5) minutes will be provided. If a running crew must take sheets down for the Maintenance and makeready crew, an additional five (5) minutes of stripping time will be provided.

### 22.    WELFARE FUND

SECTION 22. The Publisher hereby agrees that it shall contribute monthly to the Publishers'-Pressmen's Welfare Fund in lieu of wages 8.793% of total weekly gross-earnings.

CONFIDENTIAL

NYP 00415

Any increase in the employee's contribution above 30¢ per week required by law for Statutory DBL benefits will be borne by the Publisher.

It is further understood that when a junior pressman works as a journeyman, the contribution to the aforementioned Fund shall be at the journeyman rate.

The foregoing is subject to the provisions of an agreement dated as of October 21, 1954, between the Union and the Publishers' Association and approved by the Publisher.

Payments to the Trust Fund herein mentioned shall be accepted from employers not presently members of the Publishers' Association but having substantially similar collective bargaining agreements with the Union and from the Union for its officers and employees, provided that such payments shall be made on the same basis as herein set forth.

### 23.    PENSION FUND

SECTION 23. The    Publisher    shall    contribute    monthly    to    the Pressmen's-Publishers' Pension Fund in lieu of wages 10.221% of straight time pay per shift worked, or paid for, by each employee covered by this Agreement, plus $2.06 per shift worked, except that the Publisher shall not be required to contribute for more than five (5) shifts in any payroll week for any one employee except as provided in Section 28.

It is further understood that when an apprentice or junior pressman works as a journeyman, the contribution to the aforementioned Pension Fund shall be at the journeyman rate.

Payments to the aforementioned Pension Fund shall be accepted from employers not presently members of the Publishers' Association but having substantially similar collective bargaining agreements with the Union and, to the extent that the Pension Fund Trust Agreement may so provide, from the Union for its officers and employees, provided that such payments shall be made on the same basis as herein set forth.

**CONFIDENTIAL**

NYP 00416

The Publisher will continue to make contributions on the employee's wage scale to the aforementioned Welfare Fund and to the aforementioned Pension fund when an employee becomes eligible for Workers' Compensation benefits commencing after the effective date of this Agreement and during the period such benefits are paid. Such payments will be retroactive to the first day of absence.

## NEW EMPLOYER

Except as hereinafter provided otherwise in the last sentence of this Section, the Publisher shall be treated as a new employer for all purposes (including, without limitation, Subtitle E of Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")) under any and all multiemployer pension plans and multiemployer welfare plans (collectively referred to as the "Multiemployer Plans") to which it makes contributions pursuant to this Agreement. Without limiting the generality of the foregoing, the prior contribution requirements to the Multiemployer Plans of prior publishers of the New York Post shall not be attributed in any way to the Publisher, and the Publisher shall have no responsibility whatsoever for any such prior publishers or their required contributions to the Multiemployer Plans. This Section shall take precedence over any conflicting provision of this Agreement or any other agreement relating to the Multiemployer Plans or the Publisher's responsibilities with respect thereto.

Notwithstanding the foregoing, if the Publisher, in its sole discretion, elects to have the provisions of Section 4204 of ERISA apply to its acquisition of the assets of the New York Post, then the provisions of this Section shall be overridden to the extent provided in Section 4204 of ERISA.

CONFIDENTIAL

NYP 00417

## 24.     DBL PAYMENTS

SECTION 24. Concurrent DBL Payments: (1) Once in each calendar year during the term of this Contract, the Publisher will reimburse any employee covered by this Contract for all DBL payments made by the Publisher on behalf of that employee in the preceding calendar year when that employee submits to the Publisher a certification from another Publisher that in each of the 52 weeks in such preceding calendar year such other publisher paid on behalf of that employee the full DBL payment required by law. Such a certification will be valid for the purposes of this paragraph if it covers less than 52 weeks but only when the omission of any week is due solely to the non-payment of wages in such week because the employee was sick within the meaning of the Disability Benefits Law.

(2)     Claims for such reimbursement will be collected by the chapel chairman for submission in one batch to the foreman in the month of April for onward transmission by the foreman to the payroll department. Payment will be made by the payroll department no later than the following May 30th.

(3)     An Employee who cannot submit such a certification based on full payment by another employer for the full preceding calendar year may continue to make a claim as provided by law on forms which the Publisher will make available in the pressroom during April of each year. Payroll will make the required reimbursement as soon thereafter as is practicable.

## 25.     SHOP APPRENTICE

SECTION 25. It is understood and agreed that if any currently employed apprentice on the effective date hereof is receiving a rate in excess of the printed contract rate for his grade by reason of prior contract wage increase he shall for the life of this Agreement

CONFIDENTIAL

NYP 00418

continue to receive this same differential above the rate of each apprentice grade in which he may be assigned to work or to which he may be promoted.

## 26.     JOINT APPRENTICESHIP COMMITTEE

SECTION 26. There shall be a Joint Apprenticeship Committee consisting of two (2) representatives appointed by the Publisher and two (2) representatives appointed by the Union. To this committee shall be referred all matters concerning the status and hiring of apprentices and junior pressmen. The committee shall have the responsibility and authority for administering the apprentice sections of this contract and for maintaining existing priority lists of apprentices and junior pressmen.

Semi-annually the Publisher shall supply to the Joint Apprenticeship Committee work records of all apprentices and junior pressmen in his shop for the six-month periods ending December 31st and June 30th. On the basis of these records the Joint Apprenticeship Committee shall maintain a priority list of all apprentices and junior pressmen working consistently in each shop and shall maintain a master priority list of all apprentices and junior pressmen appearing on the individual shop lists. An apprentice or junior pressman may hold priority in only one shop;

In order to maintain priority on the shop lists a junior pressman must shape regularly and work a minimum of eighty-four (84) shifts in each six-month period mentioned above. Provided, however, no junior pressman shall be deleted from a Joint Apprenticeship Committee list as long as he shapes regularly or is absent for a reason recognized by the Joint Apprenticeship Committee. On their anniversary dates the Joint Apprenticeship Committee shall move Industry Apprentices and Junior Pressmen on to the higher wage classification they have attained. The Joint Apprenticeship Committee shall also add to the shop priority lists only junior pressmen who have worked one hundred and ten (110) shifts in any of the semi-annual periods.

CONFIDENTIAL

NYP 00419

Juniors with four (4) years or more of industry service shall be classified as Industry Apprentices. Juniors with less than four (4) years shall be classified Junior Pressmen.

It is agreed that the pay rates and steps set forth shall not be subject to change by the Joint Apprenticeship Committee.

## 27.    VACATION

SECTION 27. During each calendar year, each regular pressroom employee who has worked in the pressroom during the previous calendar year and who is presently employed by the Publisher shall be given one day's vacation with pay in time off for each unit of nine (9) days paid in that office during the previous calendar year.

In figuring the number of vacation days, if there is a remainder constituting a major fraction of the number of days in a unit, one additional vacation day shall be given. A remainder constituting less than a major fraction will be canceled. Fractional credits shall not be carried forward. In no case shall a regular pressroom employee on the Publisher's priority list receive more than twenty-five (25) days vacation in a calendar year.

The formula, based on shifts paid in the preceding calendar year, will be:

For first five shifts paid - one day of vacation.

For next nine shifts paid - an additional day.

For next nine shifts paid - an additional day, and so on.

An employee who is paid for 212 shifts in the preceding calendar year will be given the full five-week vacation in the year following.

Vacation and optional leave pay shall be computed at the straight-time rate being earned by the employee at the time of taking his vacation. If, however, during the year when vacation credits are accrued a journeyman works a majority of his shifts as a pressmen-in-charge,

CONFIDENTIAL

-23-

NYP 00420

or if an apprentice or a junior works a majority, of his shifts as a journeyman, then the vacation and optional leave pay shall be at the rate paid in the higher classification.

The vacation schedule shall be arranged at the convenience of the office and the days of the vacation shall be consecutive. Notwithstanding the foregoing, employees will be permitted to take up to five (5) days of their vacation entitlement each year as single days provided the employee gives the foreman a minimum of twenty-four (24) hours notice of any vacation day to be taken as a single day.

Employees may divide their vacation into weekly units by giving reasonable advance notice to the office.

Vacations with pay are to be taken in addition to any time taken off by employees on account of accumulated overtime or for any other reason. In the event of the death of an employee, his estate shall be paid in cash for all vacation credits accrued in the previous calendar year but not taken in addition to the maximum vacation pay that he would have earned and received had he worked the full year in the year in which death occurred.

In the event an employee who has not taken his vacation terminates his services or is laid off, his vacation credits accumulated in the previous calendar year shall be liquidated by payment in cash at the time he terminates his employment or is laid off by his employer. Credits for employment in the calendar year in which an employee terminates his services or is laid off shall be liquidated not later than January 10th of the following year unless the employee again is on the payroll and therefore eligible for a vacation with pay under the provision of this Article.

Days constituting less than a major fraction shall be canceled.

CONFIDENTIAL

NYP 00421

Days during sick leave shall be included in the schedule of shifts paid for which vacations are allowed. The words "sick leave" as used herein shall include time lost by reason of no-fault insurance laws, any illness or accident subject to the provisions of either the Workers' Compensation Act or Publishers'-Pressmen's Welfare Fund, and such waiting period as contained therein shall be counted as days worked, but in no event shall such period of disability in excess of thirty-five (35) weeks in the case of sickness or fifty-three (53) weeks in the case of accident, both periods including the waiting period, be counted as time worked for the purpose of vacation credits.

In no case, except when a holiday falls during a vacation period, or a day of examination for the armed forces, shall an employee receive more than twenty-five (25) days vacation in a calendar year in any one office. When a holiday falls within an employee's vacation period, he shall be given an additional day off with pay as part of his vacation except that he may be given a day's pay in lieu thereof by mutual agreement. All paid holidays are to be credited as shifts paid in computing vacation credits.

An employee who becomes ill while on vacation and so becomes eligible for State Disability Benefits may elect, upon timely notice to the office, between (a) canceling the remainder of his vacation and having such remainder rescheduled by the office at a later date or (b) remaining on vacation and receiving disability benefits payments concurrent with his vacation pay.

## 28.    OPTIONAL LEAVE

SECTION 28. Optional leave shall be granted based upon work experience in the prior year, in accordance with the following schedule:

| Shifts paid for by the Publisher in the Preceding Calendar Year | Personal Leave Days in Following Calendar Year |
|---|---|

CONFIDENTIAL

NYP 00422

| | |
|---|---|
| 31-64 | 1 |
| 65-108 | 2 |
| 109-152 | 3 |
| 153-196 | 4 |
| 197 or more | 5 |

In no case shall an employee receive more than five (5) days optional leave in a calendar year.

It is further understood that an employee may elect to be paid in cash for earned leave not taken in any calendar year, and that he will give 24 hours notice of his intention to take a day or days of leave. Optional leave days when taken or paid for will count as shifts worked for the purposes of vacation accumulation, contributions to the Publishers'-Pressmen's Welfare Fund and contributions to the Pressmen's-Publishers' Pension Fund. The pay stub shall reflect optional leave payment. As of September 30th of each year of this Contract, the Union will be given a statement as to optional leave days not yet taken.

## 29.     ABSENCE FROM WORK

SECTION 29. In the event of necessary absence of an employee through temporary illness or injury, a call to military service, or an election to office in the International or Local Union, his position shall be temporarily filled and shall be restored to him when he is able to report for duty and to perform his customary work.

Any employee who has served in the Armed Forces of the United States shall receive full vacation and optional leave credits for his time in service during the year he returns to be applied in the following year.

## 30.     APPRENTICESHIP SYSTEM

SECTION 30. (a)   Apprentices shall be selected by the Publisher through its foreman, and may be placed in the discretion of the Publisher at any task in the pressroom at any

CONFIDENTIAL

NYP 00423

time. Candidates for apprenticeship shall be at least nineteen (19) years of age, shall be of good character and physical health, shall have had a high school education, and shall file with their applications two (2) references from persons other than parents as to their qualifications.

(b)     Apprentices shall be chosen by the Publisher through the foreman in accordance with this Section. When vacancies occur in the apprenticeship ranks the names of employees selected for advancement to apprenticeship grade shall first be submitted to the Joint Apprentice Committee for approval.  No junior shall be employed as an apprentice until he has been formally indentured and the certificate of apprenticeship, countersigned by the Joint Apprentice Committee, has been filed with the Publisher.

(c)     Whenever an apprentice is or was drafted or enlisted for active service in the armed forces of the United States, he shall be considered on a leave of absence for the time in service and shall be restored to his position and grade provided he returns within ninety (90) days from date of discharge and is competent to perform his duties.

The parties to this Agreement recognize and accept mutual responsibility in the establishment and maintenance of an adequate system of apprenticeship and guarantees are hereby given by the parties hereto to give to apprentices ample opportunity for the development of the necessary mechanical and executive experience in order to assure competent craftsmanship. Apprentices when accepted by the Union shall be registered as provided by the laws of the GCIU on or after the 30th day following the beginning of their employment. The apprentice's certificate shall be made out by the Local Union in quadruplicate form, each copy to be signed by the Publisher or foreman of the newspaper and by the President or Secretary-Treasurer of the Union; when the certificate has been executed the Union shall retain one copy for itself and shall send one to the Publisher, and one to the President of the GCIU.

CONFIDENTIAL

NYP 00424

The Union agrees that every facility and encouragement shall be accorded apprentices in carrying out its share of the mutual responsibility for development of competent journeymen.

The GCIU obligates itself to furnish to the apprentices of the Union whatever information it may have from time to time dealing with technical questions involved in the operation of newspaper printing presses and in dealing with paper and inks, and to render such other assistance as may be necessary to carry out its joint obligations under this Contract.

The GCIU, New York Newspaper Printing Pressmen's Union No. 2, and the Publisher will cooperate in drafting and executing detailed plans for extending to apprentices opportunities for instruction that shall make for proficiency in their craft and improvement in their station, and they will jointly and severally enforce rules and regulations adopted by the Joint Apprentice Committee, composed of two representatives of the Publisher(s) and two representatives of the Union to be appointed immediately after the effective date of this Agreement, for the employment and education of apprentices. Such opportunities shall be limited to apprentices of this Union only until and unless the Central Printing Trades Continuation School, or a similar approved school, be reopened, and arrangements are made between the Union and the Publisher to utilize its facilities for the training of apprentices.

Apprentices shall be required to take a course of instruction as provided for by the laws of the GCIU, and shall be examined quarterly by the Joint Apprentice Committee. The results of this examination, including the record of the work of each apprentice in the pressroom, shall be made out in quadruplicate form, one for the Local Union, one for the Publisher and one for the President of the International Union. Apprentices shall be required to appear before the Joint Apprentice Committee at the end of each six (6) months of apprenticeship in order to

CONFIDENTIAL

NYP 00425

qualify for increased wages and advancement subject to the provisions of this Section. The Joint Apprentice Committee shall function as provided until and in case the Central Printing Trades Continuation School, or similar school, be reopened, in which case arrangements are to be made between the Union and the Publishers for utilizing the facilities of such school.

The Publisher shall afford apprentices every opportunity to master the work of a journeyman that the foreman deems consistent with the efficient management of the room. To this end, should the requisite number of journeymen not be available in the pressroom for one or more full days or nights, or should a journeyman be absent from his station temporarily during the day or night, the foreman shall give the opportunity of learning the duties of such a position to an apprentice. When temporarily employed for one or more full days or nights as above, the apprentice shall receive the rate which the journeyman would have been paid.

The foreman shall distribute the opportunities to learn the trade among all the apprentices in the room according to his judgment and, as above, or from time to time as he finds it practical, shall assign apprentices otherwise to work on presses, but in no case shall any such assignment be made when it involves, directly or indirectly, any increase in the number of journeymen and apprentices.

The term of apprenticeship shall be four (4) years subject to the provisions of this Article. At the satisfactory conclusion of his term of apprenticeship, an apprentice shall be eligible for journeyman membership in the Union and to be employed as a journeyman.

## 31.    BENEFIT INSURANCE

SECTION 31. The Publisher will provide a supplemental sickness and accident benefit insurance policy to each regular situation holder that will provide a cash benefit of $225.00 dollars per week in addition to weekly disability or workmen's compensation benefits to which he is entitled. If the Insurance Carrier has not paid the weekly $225 supplemental

CONFIDENTIAL

NYP 00426

disability payment by the end of thirty (30) days from the date a claim was filed, the Publisher will make such payments. Employees getting such payments from the Publisher will, upon receiving the delinquent payments from the Insurance Carrier, repay to the Publisher the amounts paid to him by the Publisher.

Such benefits shall continue for only one (1) period of twenty-six (26) weeks in any calendar year commencing with the eighth (8th) consecutive day of absence due to sickness or accident.

All regular situation holders shall be eligible for benefits provided they have worked two hundred (200) days or more in the prior current year. Day's worked shall be computed in accordance with the vacation section of the Agreement and shall include vacation days.

All premiums for such insurance shall be paid by the Publisher. The policy shall be in standard form, maintained with an insurance company licensed to do business in the State of New York and the Union will be furnished with copies of such insurance policies.

32.    CREDITS FOR ATTENDANCE AT JOINT MEETINGS

SECTION 32. Bargaining unit employees shall receive credits toward vacation, optional leave and Supplemental Sickness & Accident Benefit Insurance Policy coverage for attendance at any joint meetings between the Publisher and the Union.

33.    HEALTH AND SANITATION

SECTION 33. The Publisher agrees to maintain conditions of health and sanitation in conformity with all applicable federal and state laws. All employees are expected to comply with measures implemented by the Publisher to protect their health and safety.

The Publisher shall endeavor to furnish at all times a healthful, sufficiently ventilated, properly heated, and well-lighted space for the performance of all work. If the

CONFIDENTIAL

-30-

foreman or the Publisher does not rectify any of the condition's above set forth within forty-eight (48) hours, the matter shall be likewise referred to the Union. The chapel chairman, however, shall have the right to give immediate notice to the Union in the event of any safety device becoming defective. If the Union sustains the complaint it shall be referred to the Joint Conference Committee.

During the term of this Contract both parties jointly or either party separately may request the Division of Industrial Hygiene of the New York State Department of Labor to conduct air sampling tests in the pressroom. Both parties will cooperate in the making of any such test.

All employees are required to wear standard safety shoes and standard hearing protection while in work areas.

First aid and emergency care coverage in case of injury or illness will continue to be provided through use of a hospital emergency room as they are as of the effective date of this Agreement. Security personnel working during production shifts will receive training on a periodic basis in first aid, including, but not limited to CPR. Upon a written request by the Union, the Chapel Chairman, within a reasonable period of time, shall be given the opportunity to review the certifications of said security personnel to ensure that they have been properly trained in first aid, including, but not limited to CPR.

The Publisher's Safety Director or his/her representative will conduct at least quarterly safety audits of the pressroom and will provide the Union with a copy of his/her written report regarding the safety audit within fifteen (15) days after the audit.

A safety committee will be formed consisting of three (3) members appointed by the Union and three (3) appointed by the Publisher. The committee shall meet monthly. The

CONFIDENTIAL

NYP 00428